UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
INTEGRITY ELECTRONICS, INC.,

                Plaintiff,

- against -

GARDEN STATE DISTRIBUTORS, INC.,
& G.S.D. MARKETING GROUP, INC.,

                Defendants.
-----------------------------------------------------------X

**REPORT &
RECOMMENDATION**

09 CV 2367 (ILG)

On June 4, 2009, plaintiff Integrity Electronics, Inc. filed this action against defendants Garden State Distributors, Inc. ("Garden State") and G.S.D. Marketing Group, Inc. ("G.S.D."). Proceeding under theories of account stated, quantum meruit, and unjust enrichment, plaintiff alleges that defendants owe plaintiff $405,488 plus interest for goods sold and delivered.

The course of discovery in this case has been repeatedly delayed by the actions of either defendants or defendants' counsel, Charles Whittier, Esq. "Given the [defendants'] numerous delinquencies in discovery, as well as the resulting delays," this Court issued an Order on June 30, 2011, directing "defendants to provide written responses to interrogatories and responsive documents by July 15, 2011." (6-30-11 Order[1] at 2). The Order explicitly stated that no extensions would be granted and notified defendants that "[b]y defaulting on their discovery obligations, defendants have also waived any objections to the [plaintiff's discovery] requests." (Id.) Furthermore, in the Order, the Court warned defendants that "[s]hould defendants fail to

---

[1]Citations to "6-30-11 Order" refer to this Court's Order dated June 30, 2011. This Order memorialized and reiterated this Court's instructions to counsel, which had previously been delivered at the hearing held earlier this same day.

1

comply with this Order, the Court will impose monetary sanctions, recommend that the Answer be stricken, and recommend entry of default." (Id. at 3).

On August 16, 2011, plaintiff filed the motion currently before the Court, asserting that defendants had failed to comply with this Court's June 30, 2011 Order. Accordingly, plaintiff moves to strike the pleadings and counterclaims of defendants Garden State and G.S.D., and asks the Court to enter default against them. Plaintiff further requests that the Court award it attorney's fees and levy sanctions against Mr. Whittier, personally. Defendants responded to the motion on September 2, 2011.

## FACTUAL BACKGROUND

Defendants have engaged in unreasonable delay and obstruction throughout the entire life of this case. Defendants' conduct began during the initial phase when the parties were engaged in discovery to determine the validity of defendants' jurisdictional challenge. Plaintiff's first Amended Complaint named as individual defendants, Morris and Charles Elmann (the "Elmanns"), based on their ownership of the defendant companies, Garden State and G.S.D. In challenging the Court's jurisdiction, the Elmanns contended that they had been New York residents for over 30 years and that therefore complete diversity of the parties necessary for federal subject matter jurisdiction under 28 U.S.C. § 1332 was lacking because plaintiff corporation was also a New York resident. In bringing the action, plaintiff had relied on significant evidence that suggested that the Elmanns had residences in New Jersey and possibly Florida, including New Jersey mortgage applications, Florida business certificates, and conflicting testimony that suggested that defendants were not New York residents.

Despite plaintiff's reasonable efforts to obtain information regarding defendants' domiciles, defendants unnecessarily prolonged the jurisdictional phase of discovery by engaging in unreasonable delay tactics, including their failure to comply with four separate discovery orders issued by this Court.[2] When finally presented with the requested information, it became clear that the individual Elmann defendants were indeed New York domiciliaries and therefore, the Court lacked subject matter jurisdiction over them. Plaintiff voluntarily agreed to dismiss the non-diverse Elmann defendants on October 12, 2010. Had the defendants simply provided their tax records, which they strenuously resisted producing, the question of their domiciles might have been resolved a full year earlier when the jurisdictional discovery first began. Instead, by resisting at every turn plaintiff's reasonable efforts to obtain information, defendants created the appearance that they had something to hide and, as a consequence, unnecessarily prolonged the

---

[2] As discussed in this Court's December 7, 2010 Report and Recommendation, the abbreviated history of defendants' unreasonable behavior during the jurisdictional phase resulted in the issuance of at least four Court Orders. On January 21, 2010, the Court Ordered defendants to produce authorizations for their state income tax returns by January 29, 2010. When defendants did not comply, plaintiff submitted a letter on March 15, 2010, indicating that even though an additional six weeks had gone by, defendants still had failed to submit completed authorizations. On March 29, 2010, the Court Ordered defendants to produce these authorizations by April 2, 2010, with the instruction that the documents be produced to this Court for in camera review. Defendants again did not comply with the Court's Order. On June 9, 2010, when the Court still had not received a completed authorization form for Morris Elmann, the Court again Ordered defendants to submit a completed form, this time setting a deadline of Wednesday, June 16, 2010. Again, defendants did not comply. On June 17, 2010, the day after the deadline, defendants submitted a motion requesting an extension of time to submit the form. The Court conducted a conference with the parties that same day. Thereafter, the Court scheduled a hearing, Ordered defendants to upload to the Electronic Case Filing system ("ECF") all documents they intended to use at the hearing, and Ordered defendants to submit a selection of other records to the Court by July 15, 2010. Although defendants' accountant produced copies of certain tax records by this deadline, defendants did not submit completed releases until the hearing on September 28, 2010. It was not until 9 months of discovery disputes and repeated Court Orders that defendants provided the information necessary to evaluate the question of jurisdiction.

proceedings.

Defendants have been similarly obstructive during the merits phase of discovery in this case. Defendants have continued to resist plaintiff's legitimate demands for information regarding the merits of their defenses to plaintiff's claims and refused to comply in a timely fashion with multiple additional Court Orders. Specifically, a status conference before the Court was scheduled for February 16, 2011, but Mr. Whittier failed to appear and did not request an adjournment or provide an explanation for his absence until February 18, 2011. The Court then rescheduled the status conference for February 22, 2011, at which time the parties were Ordered to exchange discovery requests by March 31, 2011, with responses due April 29, 2011. On April 1, 2011, the parties submitted a joint motion extending both deadlines by three weeks, which the Court So Ordered the same day. (4-1-11 Order[3]). However, defendants failed to comply with these new deadlines and did not "serve responses of any kind within the required 30 days." (Grossman Decl.[4] ¶ 5; see also Whittier Aff.[5] ¶ 3).[6] After these deadlines had passed, plaintiff's counsel contacted Mr. Whittier on June 1, 2011 to inquire about defendants' failure to respond to plaintiff's interrogatories and document requests. (Grossman Decl. ¶6; Pl.'s Mem., Ex. 4). Mr.

---

[3]Citations to "4-1-11 Order" refer to this Court's April 1, 2011 Order granting the parties' joint motion for an extension of time to serve discovery requests and initial disclosures.

[4]Citations to "Grossman Decl." refer to the Declaration of Plaintiff's Counsel, Dennis Grossman, dated August 16, 2011.

[5]Citations to "Whittier Aff." refer to the Affirmation of Charles A. Whittier, Esq., defendants' counsel, dated September 1, 2011.

[6]It is unclear whether defendants ever served their own discovery requests, but given that the deadline for serving discovery requests has long since passed, the Court presumes that either any requests have been responded to in full, or defendants have waived their rights to such discovery.

4

Whittier replied by requesting an additional 10 days past the deadline to respond, to which plaintiff agreed. (Id.) Nevertheless, defendants did not serve their discovery responses by this date either. (Grossman Decl. ¶ 7).

On June 28, 2011, two weeks after the second extended deadline had passed with no responses from defendants, plaintiff filed a Status Report, informing the Court that defendants still had not provided any responses to plaintiff's interrogatories or document requests. The Court then held a status conference on June 30, 2011, at which time Mr. Whittier admitted that he had not sent discovery responses to plaintiff. (Tr.[7] at 2). Relying on Federal Rule of Civil Procedure 37(b)(2)(A) and its grant of broad authority to courts to ensure compliance with discovery orders, this Court issued an Order (1) notifying defendants that because of their lack of timely objections to plaintiff's discovery requests, the Court considered all objections to have been waived; (2) requiring responses to plaintiff's outstanding discovery requests by July 15, 2011; and (3) warning defendants that if they failed to comply with this new discovery deadline, the Court would recommend striking their Answer, entering default against them, and levying monetary sanctions. (6-30-11 Order at 2-3).

In its August 16, 2011 motion, plaintiff asserts that defendants still have not complied with their obligation to provide responses in accordance with this Court's June 30, 2011 Order. (Pl.'s Mem.[8] at 15-28). Indeed, although defendants concede that they did not timely respond to

---

[7] Citations to "Tr." refer to the Transcript of Civil Cause for Conference Before the Honorable Cheryl L. Pollak, dated June 30, 2011.

[8] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of Motion to Strike Defendants' Answer and Counterclaim, to Enter Default and Default Judgment Against Defendants for Liquidated Sum Certain in Plaintiff's Complaint, and to Dismiss Defendants' Counterclaim with Prejudice, which was filed on August 16, 2011.

5

plaintiff's discovery requests, they did submit a response on July 27, 2011, twelve days after this Court's final deadline, and more than three months after the requests were initially served.[9] (Whittier Aff. ¶ 3).

Moreover, to call defendants' overdue July 27, 2011 submission a "response" is overly generous. In their July 27, 2011 submission, defendants did not produce a single page in response to any of plaintiff's 58 specific document requests. (Grossman Decl. ¶ 14; Pl.'s Mem. at 15, Ex. 8). Instead, ignoring this Court's explicit Order finding that they had waived any and all objections to plaintiff's discovery requests, defendants objected to 12 of plaintiff's document requests as "imprecise" and/or "overbroad in the extreme[,] rendering them irrelevant and lacking [in] particularity as required under FRCP r. 26(b) and r. 34(b) [*sic*]" (Pl.'s Mem. at 15, Ex. 8[10] ¶¶ 1-5, 10-12; 23-26; see also Grossman Decl. ¶ 16; Whittier Aff. ¶ 7). In addition to raising this belated objection in an attempt to excuse their noncompliance, defendants claimed that for the remaining 46 document requests, they had no responsive documents in their

---

[9]The Court notes that the date on which defendants served their initial "response" is somewhat unclear. While defense counsel admits in his Affirmation to not serving responses until July 27, 2011, plaintiff's counsel actually states in his Declaration that "defendants served 'responses'" on July 15, 2011, which would have met this Court's deadline. (Grossman Decl. ¶ 13). However, even if the Court credits plaintiff's version of the date – against plaintiff's interest – the critical issue is that, even if timely, defendants' "response" was inadequate.

[10]Citations to "Ex. 8" refer to Defendants' Responses to Plaintiff's Requests for Documents, dated July 14, 2011, with supplementary responses attached and dated July 15 or 18, 2011 [illegible]. This document is attached as Exhibit 8 to Plaintiff's Memorandum of Law in Support of Motion to Strike Defendants' Answer and Counterclaim, to Enter Default and Default Judgment Against Defendants for Liquidated Sum Certain in Plaintiff's Complaint, and to Dismiss Defendants' Counterclaim with Prejudice, which was filed on August 16, 2011.

possession."¹¹ (Pl.'s Mem. at 15, Ex. 8 ¶¶ 6-9, 13-14, 16-22, 24-30; see also Whittier Aff. ¶¶ 6, 7). However, in 7 of those instances, defendants admitted that some responsive documents "may be contained in a file kept by the defendants in their offices," but they claimed "[t]hat file has been temporarily misplaced." (Pl.'s Mem. at 15, Ex. 8 ¶¶ 6, 13-14, 18-21; see also Grossman Decl. ¶ 15; Whittier Aff. ¶ 10). Notably, like the rest of the documents reasonably requested by plaintiffs, these allegedly "temporarily misplaced" documents were originally due to be submitted on April 21, 2011, and thus were three months late already. (4-1-11 Order).

Finally, on September 2, 2011, over six weeks past the Court's final deadline, defendants allegedly located and served a small number of documents on plaintiff. (Grossman Reply Decl.¹² ¶ 7; Whittier Aff. ¶ 10). These documents, which were served with defendants' opposition to the instant motion, were described by defendants as "primarily accounts, invoices, and correspondence between the parties attempting to settle outstanding accounts receivables." (Whittier Aff. ¶ 10). However, plaintiff asserts that "[t]hese few documents are trivial; they consist of a few letters from plaintiff's counsel, some notes, some invoices from plaintiff, and some check register stubs." (Grossman Reply Decl. ¶ 7). According to plaintiff, defendants "still have not produced a single document on the merits" (Pl.'s Mem. at 29), and have not produced any documents to substantiate their claimed defense that plaintiff's merchandise was

---

¹¹Plaintiff contends that "[d]efendants further falsely denied possession or control of documents which they previously produced in redacted form or which they otherwise clearly have – obvious perjury by the defendants." (Pl.'s Mem. at 1). However, plaintiff does not specify which documents it refers to here.

¹²Citations to "Grossman Reply Decl." refer to Reply Declaration of Plaintiff's Counsel Dennis Grossman in Support of Plaintiff's Motion to Strike Defendants' Pleadings, Enter Default and Default Judgment Against Defendants, and Impose Monetary Sanctions Against Defendants and Counsel, dated September 9, 2011.

7

defective. (Id. at 28).

As for plaintiff's interrogatories, defendants appear to have responded timely on July 15, 2011, the final deadline imposed by this Court. However, defendants' responses were again inadequate. Defendants claimed that they could not answer 6 of the interrogatories because the underlying files had "been temporarily misplaced." (Pl.'s Mem., Ex. 9[13] ¶¶ 1-4, 9-10; see also Whittier Aff. ¶ 10). Furthermore, despite this Court's clear Order of June 30, 2011 stating that defendants had waived all objections by their delinquency, defendants nonetheless refused to answer 5 of plaintiff's interrogatories on the grounds that they were "imprecise and overbroad in the extreme rendering [them] irrelevant and lacking particularity as required under FRCP r. 26(b) and r. 34(b)." (Pl.'s Mem., Ex. 9 ¶¶ 11-15).[14]

In response to plaintiff's current motion, defendants assert that they "only declined to answer interrogatories or admission requests, where those requests were overly broad and too vague to be answered" (Whittier Aff. ¶ 7), outside the scope of the defendant corporations' knowledge (id. ¶¶ 6, 7), improperly directed at the dismissed Elmann defendants (id. ¶ 5), or outside the time frame of discovery set by the Court. (Id. ¶ 7). According to the Affidavit of defendant's counsel, which was filed on September 2, 2011, four months after the original discovery deadline and six weeks after this Court's final deadline, "there was no intention by the

---

[13]Citations to "Ex. 9" refer to Defendants' Responses to Plaintiff's Interrogatories, dated July 14, 2011, with supplementary responses attached and dated July 15 or 18, 2011 [illegible]. This document is attached as Exhibit 9 to Plaintiff's Memorandum of Law in Support of Motion to Strike Defendants' Answer and Counterclaim, to Enter Default and Default Judgment Against Defendants for Liquidated Sum Certain in Plaintiff's Complaint, and to Dismiss Defendants' Counterclaim with Prejudice, which was filed on August 16, 2011.

[14]Neither party has discussed defendants' responses – or lack thereof – to plaintiff's request for admissions. Accordingly, the Court presumes that they were properly served.

8

defendants to decline to respond to plaintiff's requests, except where the nature of the request made it impossible to comply." (Id.)

## DISCUSSION

A.  Plaintiff's Motion to Strike the Pleadings, Dismiss
    Defendants' Counterclaim, and Enter Default Judgment

   1)  Merits

Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders"). Specifically, Rule 37(b)(2) provides that if a party "fails to obey an order to provide or permit discovery," the Court's response may include any of the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Given that "compliance with discovery orders. . .is necessary to the integrity of our judicial process. . .part[ies] who flout[] such orders do so at [their] peril." Update

9

Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir. 1988).

Even though "[d]ismissal under Rule 37 is an extreme sanction, to be imposed only in extreme circumstances," Jones v. Niagara Frontier Trans. Auth., 836 F.2d 731, 735 (2d Cir. 1987), the Second Circuit "has consistently recognized" that where "a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault," striking the pleadings and entering default judgment under Rule 37 is appropriate. S.E.C. v. Setteducate, 419 Fed. Appx. 23, 24 (2d Cir. 2011). Consequently, courts in this Circuit have often entered default judgment against parties that repeatedly refuse to comply with their discovery obligations despite court orders and warnings of impending sanctions, and the Second Circuit has consistently affirmed those decisions. See, e.g., id. (affirming district court's entry of default judgment based on a variety of factors, including the defaulting party's failure to comply with discovery deadlines he himself requested, failure to comply with court orders despite explicit warnings that sanctions would follow, and unnecessarily prolonging the case consistent with a deliberate strategy to delay); see also Robertson v. Dowbenko, No. 10-CV-2820, 2011 WL 5222849, at *1 (2d Cir. Nov. 3, 2011); American Cash Card Corp. v. AT&T Corp., 210 F.3d 354 (2d Cir. 2000), aff'ing 184 F.R.D. 521, 524-25 (S.D.N.Y. 1999); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d at 73 (affirming magistrate judge's award of summary judgment and damages after defendant continually violated discovery orders despite magistrate's warning that continued violation would result in sanctions).

Here, defendant's actions track closely with the types of obstructive tactics that led the Second Circuit to affirm the district courts' impositions of default judgment in S.E.C. v. Setteducate, 419 Fed. Appx. 23, and Robertson v. Dowbenko, 2011 WL 5222849. After first

engaging in unreasonable delay tactics during the jurisdictional phase of discovery, during which defendants disregarded four different discovery Orders issued by this Court, defendants have continued this obstructive behavior during the merits phase. Specifically, defendants have failed to comply in a timely or adequate fashion with two additional Court Orders. Apart from their failure to comply with Court Orders, defendants have ignored discovery deadlines that they mutually arranged with plaintiffs, including extended deadlines that defendants themselves requested. Moreover, the inadequate responses that they have ultimately submitted are reminiscent of their responses in the jurisdictional phase of discovery. Indeed, defendants' behavior throughout this case is consistent with a deliberate strategy to delay and frustrate these proceedings. Their most recent failure to comply occurred despite an explicit Court Order issued on June 30, 201, warning defendants that not only had they waived their right to object to plaintiff's discovery demands, but giving notice that further failure to provide adequate discovery would prompt this Court to recommend striking defendants' pleadings, entering default judgment, and levying monetary sanctions against them.

The Court is not persuaded by defendants' belated excuse that "there was no intention by the defendants to decline to respond to plaintiff's requests, except where the nature of the request made it impossible to comply." (Whittier Aff. ¶ 10). Had there been a legitimate basis to object to specific requests as vague or overbroad, defendants had over two months to raise their concerns with plaintiff's counsel or to issue formal written objections in accordance with the procedures set forth in the Federal Rules of Civil Procedure. Given defendants' ultimate and paltry responses to plaintiff's document requests and interrogatories, defendants' argument that it was "impossible to comply" at all with 51 of plaintiff's 58 document requests or 5 of plaintiff's

11

19 interrogatories, and that it was "impossible to comply" in a timely fashion with the other 7 document requests and 6 of the interrogatories does not ring true.

Together, plaintiff and the Court have been more than generous in giving defendants extensions of discovery deadlines, even where defendants failed to make timely requests for such extensions. Defendants had ample opportunity to timely object to or comply with plaintiff's discovery requests. They did neither. Consequently, in accordance with the warnings contained in its June 30, 2011 Order, the Court respectfully recommends that an Order enter striking defendants' pleadings and entering a default judgment against them. In the alternative, the Court respectfully recommends that, in light of defendants' failure to produce any meaningful discovery, they be precluded from offering any evidence in opposition to plaintiff's claims.

2) <u>Damages</u>

In addition to seeking to strike defendants' answer and enter a default against defendants, plaintiff urges the Court to simply enter judgment in the amount sought in the Complaint. Plaintiff contends that no evidentiary submission or inquest hearing is necessary to determine the amount of damages plaintiff should be awarded in default judgment. (Pl.'s Mem. at 33). According to plaintiff, defendants owe a "liquidated sum which is capable of calculation to a mathematical certainty without an evidentiary hearing." (Pl.'s Mem. at 33, Elkayam Decl.[15] ¶¶ 6, 8). Specifically, plaintiff alleges that defendants owe a balance of $405,488 on goods sold and

---

[15]Citations to "Elkayam Decl." refer to the Declaration of Plaintiff's President Avi Elkayam, which was filed on August 16, 2011 attached to Plaintiff's Memorandum of Law in Support of Motion to Strike Defendants' Answer and Counterclaim, to Enter Default and Default Judgment Against Defendants for Liquidated Sum Certain in Plaintiff's Complaint, and to Dismiss Defendants' Counterclaim with Prejudice as "Exhibit 10."

12

delivered to them (Compl.[16] ¶ 8; Pl.'s Mem. at 34-35, Elkayam Decl. ¶¶ 6, 8-10), and an additional $116,577.80 in statutorily-mandated pre-judgment interest calculated at the rate of 9% per year, resulting in a total sum due of $522,065.80. (Compl. ¶ 9; Pl.'s Mem. at 37).

Although "a default judgment constitutes an admission of liability," generally "the quantum of damages remains to be established by proof. . . ." Vierling Commc'ns GMBH v. Stroyls, 09 Civ. 6654, 2011 WL 5854625, at *1 (S.D.N.Y. Sept. 16, 2011) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). However, if "the amount is liquidated or susceptible of mathematical computation," no such additional evidentiary hearing or submission is necessary. Id. See also E-Centurion, Inc. v. Long Beach Co., 2007 WL 2815689, at *1 (E.D.N.Y. 2007) (holding that "[i]t is axiomatic that 'the court must ensure that there is a basis for the damages specified in a default judgment, [and] it may, but need not, make the determination through a hearing'") (citing cases); Fed. R. Civ. P. 55(b)(2) (stating that the court has discretion on whether a damages hearing is necessary). In fact, even if the damages are "neither liquidated nor capable of mathematical calculation," it may be unnecessary for the court to hold an evidentiary hearing as long as there is "a basis for the damages specified in [the] default judgment," such as "detailed affidavits or documentary evidence, supplemented by [the Court's] personal knowledge of the record. . . ." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (finding no hearing necessary where court "was inundated with affidavits, evidence, and oral presentations by opposing counsel"). Moreover, in the court's calculation of damages,

---

[16]Citations to "Compl." refer to the Second Amended Complaint (Corrected), filed on March 8, 2011.

"plaintiff is entitled to all reasonable inferences from the evidence it offers." Vierling Comme'ns GMBH v. Stroyls, 2011 WL 5854625, at *1 (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

Furthermore, under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right" in the amount of 9% per annum. Vierling Comme'ns GMBH v. Stroyls, 2011 WL 5854625, at *5 (citing cases); C.P.L.R. §§ 5001, 5004. This statutorily-mandated interest is to be calculated from the "earliest ascertainable date the cause of action existed." Id.; C.P.L.R. § 5001(b). However, when a seller allows a buyer a grace period to pay its bill, this date is "the date plaintiff first demanded that defendant pay down its outstanding account," not the date of the unpaid invoices. Music Sales Corp. v. Mark Music Service, Ltd., 194 A.D.2d 470, 471, 599 N.Y.S.2d 280, 281 (1st Dep't 1993).

In support of its claim of $405,488 in liquidated damages for goods sold and delivered but unpaid, plaintiff has submitted the Declaration of its president, Avi Elkayam (Elkayam Decl. ¶¶ 6, 8-10), and a document entitled "GSD Marketing Group Open Invoice Account Balance," which ostensibly lists the specific shipments for which defendants did not pay. (Id., Ex. A). Having reviewed the documentation, the Court respectfully recommends that, if this Report and Recommendation is adopted and a default is entered, that the plaintiff's request for damages be referred to the undersigned for an inquest hearing, at which time plaintiff will be given an opportunity to explain its documentary submission and defendants, should they so choose, will be given an opportunity to be heard on the issue of damages.

Moreover, the Court lacks sufficient information to calculate the date from which the

statutorily-mandated 9% per annum pre-judgment interest runs. Plaintiff admits that "defendants maintained a running credit account with plaintiff" for the purchase of the electronics equipment at issue in this case. (Elkhayam Decl. ¶ 4). Although plaintiff repeatedly declares "June 5, 2008 to be the earliest date on which the entire principal $405,488 became due" (Compl. ¶¶ 6, 9, 10; Pl.'s Mem. at 37), plaintiff's submissions do not make clear when plaintiff demanded defendant pay down its outstanding balance. See Music Sales Corp. v. Mark Music Service, Ltd., 194 A.D.2d at 471. Instead, June 5, 2008 appears to be the last date on which plaintiff sold and delivered goods to defendants. (Compl. ¶ 7) (alleging that "[f]rom on or about Feb. 28, 2008 to on or about June 5, 2008 plaintiff...sold and delivered goods...to or on behalf of defendants..."). This is supported by plaintiff's "GSD Marketing Group Open Invoice Account Balance" submission, which shows two invoices dated June 5, 2008 and none more recent. Consequently, should the case be referred for an inquest hearing, the Court would direct the plaintiff to submit documentation showing when it demanded payment from defendants in order to determine the amount of pre-judgment interest owed.

### B. Plaintiff's Motion for Attorney's Fees

In addition to the sanctions already discussed, Rule 37(b)(2)(C) provides that:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to fulfill discovery obligations], unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). Plaintiff has requested that the Court award plaintiff its reasonable

15

expenses, including attorney's fees, incurred due to defendants' inaction. Given defendants' repeated obstructive behavior, the defendants' lack of justifiable excuse, and the burden placed on plaintiff and its counsel to ensure that the litigation proceed despite defendants' misconduct, the Court finds that an award of fees is appropriate. However, although plaintiff's counsel claims that his "office has expended in excess of 40 hours of attorneys [*sic*] time" and that, given his "reasonable rate of $350/hour," the "Court should award $14,000 [in] attorney's fees under Rule 37(b)(2)(C)," plaintiff has not provided documentation to substantiate these amounts.

Accordingly, this Court respectfully recommends that plaintiff be given an opportunity to submit the required documentation, and that the matter be referred to the undersigned to determine the amount plaintiff is to be awarded to cover reasonable attorneys' fees and expenses incurred in connection with counsel's efforts to enforce discovery Orders and deadlines.

C.  Plaintiff's Motion to Impose Sanctions Personally on Defense Counsel

Plaintiff's present motion further contends that the Court should impose monetary sanctions jointly and severally on defendants and their counsel, Mr. Whittier, on the theory that Mr. Whittier "has been a knowing and willful participant in these discovery contempts" acting in "bad faith." (Pl.'s Mem. at 39). See also 28 U.S.C. § 1927 (allowing courts to require "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"). The Second Circuit has observed that the power to sanction attorneys "carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution, so as not to 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the

16

law.'" Mone v. C.I.R., 774 F.2d 570, 574 (2d Cir. 1985) (quoting Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)). Sanctions under the statute may only be imposed "when there is a finding of conduct constituting or akin to bad faith." In re 60 East 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (internal citations omitted). The Second Circuit has held awards under the statute to be proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (quoting United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).

While plaintiff has persuasively demonstrated that defendants have failed to fulfill their discovery obligations, disregarded this Court's Orders, and unreasonably delayed these proceedings, it is unclear from the record whether this is due to the bad faith of defendants, their counsel, or both. Consequently, the Court respectfully recommends that monetary sanctions be levied solely against defendants, not jointly and severally against defense counsel as well.

## CONCLUSION

Given that this Court closely supervised the pre-trial proceedings in this case and previously indicated that defendants' failure to respond to plaintiff's discovery requests would result in a recommendation for sanctions, the Court now respectfully recommends that defendants' Answer and Counterclaim be stricken and that a default be entered in this case against defendants Garden State Distributors, Inc. and G.S.D. Marketing Group, Inc.

It is further respectfully recommended that plaintiff's request for damages be referred to the undersigned to conduct an inquest on damages, calculate the amount of pre-judgment interest

owed to plaintiff, and determine the amount of reasonable attorney's fees and costs, if any, to be awarded under Rule 37(b)(2)(C). The Court also respectfully recommends that monetary sanctions be levied solely against the defendants, and not their counsel, Mr. Whittier.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 6, 2012

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York